LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN (111070)
JEFFREY W. LAWRENCE (166806)
DENNIS J. LAWRENCE (220163)
CHRISTOPHER P. SEEFER (201197)
SHIRLEY H. HUANG (206854)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)
PatC@lerachlaw.com
JeffreyL@lerachlaw.com
DennisH@lerachlaw.com
ChrisS@lerachlaw.com
ShirleyH@lerachlaw.com
     – and –
WILLIAM S. LERACH (68581)
JOY ANN BULL (138009)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
BillL@lerachlaw.com
JoyB@lerachlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re VERISIGN, INC. SECURITIES LITIGATION | ) | Master File No. C-02-2270-JW(PVT) |
|---|---|---|
| | ) | CLASS ACTION |
| This Document Relates To: | ) | NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  LEAD PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| ALL ACTIONS. | ) | |
| | ) | |

DATE:     March 12, 2007
TIME:     9:00 a.m.
COURTROOM:  The Honorable James Ware

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ........................................................................1

4   II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION............................2

5   III.    AWARD OF ATTORNEYS' FEES ..................................................2

6         A.     The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award................................................2

7

8                1.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ........................................................2

9

10               2.     A Fee of 25% of the Fund Created is Reasonable ........................................5

11         B.     Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of 25% in This Case ..................................6

12               1.     The Result Achieved....................................................6

13               2.     The Risks of Litigation ................................................6

14               3.     The Skill Required and the Quality of the Work ........................................8

15               4.     The Novelty and Difficulty of the Questions Presented ............................8

16               5.     The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel ................................................9

17

18               6.     A 25% Fee Award Is Below the Average Fee Awarded in Similar Complex Class Action Litigation................................................10

19               7.     The Customary Fee ................................................12

20               8.     Reaction of the Settlement Class Supports Approval of the Attorneys' Fees Requested ........................................13

21

22   IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................16

23   V.     CONCLUSION....................................................17

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995)..............................................................................16

*Arenson v. Bd. of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ....................................................................8

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)................6

*Blum v. Stenson*,
    465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)..............................3, 12

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
    8 F.3d 722 (10th Cir. 1993) ...............................................................................16

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) .............................................................................3

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .............................................................................3

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)...................................9

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    741 F. Supp. 84 (S.D.N.Y. 1990)......................................................................17

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..................................................................................3

*Goldstein v. MCI WorldCom*,
    340 F.3d 238 (5th Cir. 2003) ...............................................................................9

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) .........................................................................3, 17

*Gottlieb v. Wiles*,
    150 F.R.D. 174 (D. Colo. 1993), *rev'd and remanded on other*
    *grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994)...................17

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ...............................................................................3

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .................................................................................16

*Hensley v. Eckerhart*,
    461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)................................6, 17

*In re Aetna Inc. Sec. Litig.*,
    MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) .................11

Page

*In re Charter Commc'ns, Inc. Sec. Litig.*,
    MDL No. 1506 (E.D. Mo. June 30, 2005) .......................................................................15

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .............................................................................4, 12, 17

*In re DJ Orthopedics, Inc. Sec. Litig.*,
    No. 01-CV-2238-K, 2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004) ...............12

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................................8

*In re Harrah's Entm't*,
    No. 95-3925, 1998 U.S. Dist. LEXIS 18774 (E.D. La. Nov. 25, 1998) ...........................14

*In re Heritage Bond Litig. v. U.S. Trust Co. of Texas, N.A.*,
    02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
    (C.D. Cal. June 10, 2005) ...............................................................................7, 8, 11

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)...............................................................7, 9, 11, 13

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976)...............................................................6, 7, 8

*In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*,
    No. 1:04CV00416 (M.D.N.C. Feb. 15, 2007) .................................................................16

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
    (S.D. Cal. Aug. 30, 1990) ...............................................................................12

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
    842 F. Supp. 733 (S.D.N.Y. 1994)...............................................................................17

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................................16, 17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................................11, 13

*In re Prison Realty Sec. Litig.*,
    No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001).....................12

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
    No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)....................................................9, 10

*In re Prudential Sec. Ltd. P'ships Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996).................................................................................12

Page

*In re Rite Aid Corp. Sec. Litig.,*
146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................11, 14

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3d Cir. 2005)..................................................................................13, 14

*In re Sunbeam Sec. Litig.,*
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ..........................................................................12

*In re Synthroid Mktg. Litig.,*
264 F.3d 712 (7th Cir. 2001) .........................................................................................12

*In re Synthroid Mktg. Litig.,*
325 F.3d 974 (7th Cir. 2003) .........................................................................................12

*In re Titan, Inc. Sec. Litig.,*
No. 04-CV-0676-LAB (NLS) (S.D. Cal. Dec. 20, 2005) ................................................15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
19 F.3d 1291 (9th Cir. 1994) ................................................................................3, 6, 7, 9

*In re Xcel Energy, Inc.,*
364 F. Supp. 2d 980 (D. Minn. 2005)..............................................................................15

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.,*
No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982) ...................8

*Johnson v. Ga. Highway Express, Inc.,*
488 F.2d 714 (5th Cir. 1974) ...........................................................................................8

*Kirchoff v. Flynn,*
786 F.2d 320 (7th Cir. 1986) .......................................................................................4, 14

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.,*
540 F.2d 102 (3d Cir. 1976).........................................................................................6, 7

*Marshall v. Holiday Magic, Inc.,*
550 F.2d 1173 (9th Cir. 1977) ........................................................................................13

*Miltland Raleigh-Durham v. Myers,*
840 F. Supp. 235 (S.D.N.Y. 1993)..................................................................................16

*Paul, Johnson, Alston & Hunt v. Graulty,*
886 F.2d 268 (9th Cir. 1989) ...................................................................................3, 4, 5

*Phemister v. Harcourt Brace Jovanovich, Inc.,*
No. 77 C 39, 1984 U.S. Dist. LEXIS 23595 (N.D. Ill. Sept. 14, 1984)..............................4

*Powers v. Eichen,*
229 F.3d 1249 (9th Cir. 2000) .........................................................................................5

1

2                                                                                                    **Page**

3    *Scheiner v. i2 Techs., Inc.,*
         No. 3:01-CV-418-H (N.D. Tex. Oct. 1, 2004)..................................................................15

4
     *Schwartz v. TXU Corp.,*
5        Cause No. 3:02-CV-2243-K, 2005 U.S. Dist LEXIS 28453
         (N.D. Tex. Nov. 8, 2005) ................................................................................................15

6
     *Six Mexican Workers v. Ariz. Citrus Growers,*
7        904 F.2d 1301 (9th Cir. 1990) .........................................................................................3

8    *Swedish Hosp. Corp. v. Shalala,*
         1 F.3d 1261 (D.C. Cir. 1993) ...........................................................................................3

9
     *Taubenfeld v. Aon Corp.,*
10       415 F.3d 597 (7th Cir. 2005) ..........................................................................................11

11   *Thornberry v. Delta Air Lines,*
         676 F.2d 1240 (9th Cir. 1982), *vacated and remanded on other grounds,*
12       461 U.S. 952 (1983)........................................................................................................17

13   *Torrisi v. Tucson Elec. Power Co.,*
         8 F.3d 1370 (9th Cir. 1993) ..........................................................................................3, 5

14
     *Trustees v. Greenough,*
15       105 U.S. 527, 26 L. Ed. 1157 (1882) ...............................................................................3

16   *Vincent v. Hughes Air West, Inc.,*
         557 F.2d 759 (9th Cir. 1977) ............................................................................................3

17
     *Vizcaino v. Microsoft Corp.,*
18       142 F. Supp. 2d 1299 (W.D. Wash. 2001) .......................................................................8

19   *Vizcaino v. Microsoft Corp.,*
         290 F.3d 1043 (9th Cir. 2002) .............................................................................3, 11, 12

20
     *Winkler v. NRD Mining, Ltd.,*
21       198 F.R.D. 355 (E.D.N.Y.), *aff'd sub nom. Winkler v. Wigley,*
         242 F.3d 369 (2d Cir. 2000)...........................................................................................10

22

23   **STATUTES, RULES AND REGULATIONS**

24   15 U.S.C.
         §78u-4(a)(6) ......................................................................................................................5

25

26   **SECONDARY AUTHORITIES**

27
     1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
28       §1.09................................................................................................................................13

NOTICE OF MOTION & MEMO OF P'S & A IN SUPPORT OF LEAD PLAINTIFFS' APPLICATION      – v –
FOR AWARD OF ATTYS' FEES & REIMBURSEMENT OF EXPENSES - C-02-2270-JW(PVT)

1

2                                                                                        **Page**

3

4   Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due Process and the Lodestar Method: You Can't Get There from Here* (2000)
          74 Tul. L. Rev. 1809 ...................................................................................5, 14

5

6   Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* (NERA Nov. 1996) ............................................................11

7

8   John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions* (1986)
          86 Colum. L. Rev. 669...........................................................................5

9

10  Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
          108 F.R.D. 237 (Oct. 8, 1985) ...............................................................4

11

12  Richard Posner, *Economic Analysis of Law* (3d ed. 1986)
          §21.9.........................................................................................................9

13  Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements,*

14  *is Stabilization Ahead?* (NERA Apr. 2006)......................................................7

15  Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on*

16  *Civil Rules* (Federal Judicial Center 1996) ...............................................11

17  Wayne Schneider, *Objections to Attorneys Fee Requests in Federal Securities Class Actions*, The NAPPA Report, Vol. 19, No. 1, February 2005 .......................15

18

19  Wayne Schneider, *An Obligation to Pursue Litigation? Really?*,
    The NAPPA Report, May 1997 ..................................................................15

20

21

22

23

24

25

26

27

28

1   TO:      ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2            PLEASE TAKE NOTICE that on March 12, 2007, at 9:00 a.m., in the Courtroom of the

3   Honorable James Ware, United States District Judge, at the United States Courthouse, 280 South

4   First Street, San Jose, California, Lead Plaintiffs will and hereby do move for an award of attorneys'

5   fees and reimbursement of expenses.  This motion is based upon the Memorandum of Points and

6   Authorities in Support of Lead Plaintiffs' Application for Award of Attorneys' Fees and

7   Reimbursement of Expenses, the Declaration of Jeffrey W. Lawrence in Support of Lead Plaintiffs'

8   Application for Final Approval of Class Action Settlement; and Plan of Allocation of Settlement

9   Proceeds; and Award of Attorneys' Fees and Reimbursement of Expenses ("Lawrence Decl."), the

10  declarations of counsel for Lead Plaintiffs, filed herewith, the Stipulation of Settlement and Release

11  dated as of December 12, 2006, and all other pleadings and matters of record.

12                          **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.        INTRODUCTION**

14           Lead Counsel negotiated a class settlement consisting of $78,000,000 in cash.[1]  For their

15  efforts in achieving this result, Lead Counsel seek a benchmark fee of 25% of the Settlement Fund

16  plus reimbursement of out-of-pocket expenses of $4.2 million.

17           The Lawrence Declaration details the extensive work performed over the past five years for

18  the benefit of the Class, including an extensive pre-filing investigation, locating and interviewing

19  over 100 witnesses, successfully opposing in the main Defendants' motions to dismiss, obtaining

20  class certification, completing substantial discovery including the review and analysis of four million

21  pages of documents and taking 22 depositions.  Lead Counsel spent considerable time and resources

22  to develop a case that would survive the pleading requirements of the Private Securities Litigation

23  Reform Act of 1995 ("PSLRA") and convince Defendants' that the Lead Plaintiffs were prepared to

24  pursue this matter to trial if necessary.  A comprehensive description of the claims asserted by the

25

26  _____

27  [1]      All capitalized terms not defined herein shall have the same meanings set forth in the
    Stipulation of Settlement and Release dated as of December 12, 2006.

28
    NOTICE OF MOTION & MEMO OF P'S & A IN SUPPORT OF LEAD PLAINTIFFS' APPLICATION
    FOR AWARD OF ATTYS' FEES & REIMBURSEMENT OF EXPENSES - C-02-2270-JW(PVT)      - 1 -

1   Lead Plaintiffs as well as the efforts expended by Lead Counsel are set forth in the Lawrence

2   Declaration.

3           The 25% benchmark fee requested is more than fair and reasonable when considered under

4   the applicable standards and, as discussed below, is well within the normal range of awards made in

5   contingent fee matters of this type, particularly in view of the result achieved and the considerable

6   risks attendant in bringing and pursuing this litigation.  This case involved complex issues, including

7   proof of scienter, loss causation and damages.  The legal issues presented a significant risk that Lead

8   Plaintiffs would spend several more years at sizable cost and would not obtain a better recovery (or

9   any recovery at all) for the Class.

10          For the reasons set forth herein, and in the Lawrence Declaration, we respectfully submit that

11  the requested attorneys' fees and the expenses for which reimbursement is sought are fair and

12  reasonable under the applicable legal standards and, in light of the significant risks faced and the

13  excellent result achieved, should be awarded by this Court.

14  **II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION**

15          The Lawrence Declaration is an integral part of this submission.  The Court is respectfully

16  referred to it for a detailed description of the factual and procedural history of the litigation, the

17  claims asserted, the extensive investigation and discovery undertaken, the settlement negotiations, as

18  well as the numerous risks and uncertainties presented in this litigation.

19  **III.    AWARD OF ATTORNEYS' FEES**

20      **A.     The Legal Standards Governing the Award of Attorneys' Fees in
                 Common Fund Cases Support the Requested Award**

21

22          **1.     A Reasonable Percentage of the Fund Recovered Is the
                      Appropriate Method for Awarding Attorneys' Fees in
                      Common Fund Cases**

23

24          For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seek a

25  reasonable percentage of the fund recovered as attorneys' fees.  In recent years, the percentage

26  method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in

27  common fund cases in this Circuit and throughout the United States.

28

1   It has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts

2   create, discover, increase or preserve a fund to which others also have a claim is entitled to recover

3   from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*,

4   557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that

5   "those who benefit from the creation of the fund should share the wealth with the lawyers whose

6   skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300

7   (9th Cir. 1994) ("*WPPSS*").  This rule, known as the common fund doctrine, is firmly rooted in

8   American case law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527, 26 L. Ed. 1157 (1882); *Cent. R.*

9   *R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885).[2]

10   In *Blum v. Stenson*, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), the

11   Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based

12   "on a percentage of the fund bestowed on the class."  In this Circuit, the district court has discretion

13   to award fees in common fund cases based on either the so-called lodestar/multiplier method or the

14   percentage-of-the-fund method.  *WPPSS*, 19 F.3d at 1296.  In *Paul, Johnson*, 886 F.2d 268, *Six*

15   *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v. Tucson Elec.*

16   *Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir.

17   2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases.

18   Moreover, supporting authority for the percentage method in other circuits is overwhelming.[3]

19   _____

20   [2]   In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit

21   explained the principle underlying fee awards in common fund cases:

22   Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*,
     113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is

23   allowed an ***extra*** reward, beyond that which he has arranged with his client, so that
     he might share the wealth of those upon whom he has conferred a benefit.  The

24   amount of such a reward is that which is deemed "reasonable" under the
     circumstances.

25   *Id.* at 271 (citations omitted, emphasis in original).

26   [3]   Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys'

27   fees in common fund cases.  Two circuits have ruled that the ***percentage method is mandatory in***
     ***common fund cases***.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I*

28   *Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  Other circuits and commentators

Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions. The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[4] Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[5] Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has

---

have expressly approved the use of the percentage method. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of *Blum* recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

[4] Courts are encouraged to look to the private marketplace in setting a percentage fee:

> The judicial task might be simplified if the judge and the lawyers [spent] their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. Suppose a large investor had sued Continental for securities fraud, and won $45 million. What would its lawyers have gotten pursuant to their contingent fee contract?

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). *See also Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40-*41 (N.D. Ill. Sept. 14, 1984).

[5] In *Kirchoff v. Flynn*, 786 F.2d 320, 325, 326 (7th Cir. 1986), the court stated:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . .

> At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

NOTICE OF MOTION & MEMO OF P'S & A IN SUPPORT OF LEAD PLAINTIFFS' APPLICATION
FOR AWARD OF ATTYS' FEES & REIMBURSEMENT OF EXPENSES - C-02-2270-JW(PVT)      - 4 -

1  concluded that the percentage method of awarding fees is the only method of fee awards that is

2  consistent with class members' due process rights.  Professor Silver notes:

3          ***The consensus that the contingent percentage approach creates a closer
           harmony of interests between class counsel and absent plaintiffs than the lodestar***

4          ***method is strikingly broad.***  It includes leading academics, researchers at the RAND
           Institute for Civil Justice, and many judges, including those who contributed to the

5          Manual for Complex Litigation, the Report of the Federal Courts Study Committee,
           and the report of the Third Circuit Task Force.  Indeed, it is difficult to find anyone

6          who contends otherwise.  No one writing in the field today is defending the lodestar
           on the ground that it minimizes conflicts between class counsel and absent claimants.

7

8          ***In view of this, it is as clear as it possibly can be that judges should not
           apply the lodestar method in common fund class actions.***  The Due Process Clause
           requires them to minimize conflicts between absent claimants and their

9          representatives.  The contingent percentage approach accomplishes this.

10 Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due Process and the*

11 *Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis

12 added).[6]  This is particularly appropriate in PSLRA cases where Congress recognized the propriety

13 of the percentage method of fee awards.[7]

14              **2.       A Fee of 25% of the Fund Created is Reasonable**

15         In *Paul, Johnson*, the Ninth Circuit established 25% of the fund as the "benchmark" award

16 for attorneys' fees.  886 F.2d at 272; *see also Torrisi*, 8 F.3d at 1376 (reaffirming 25% benchmark);

17 *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same).  The guiding principle in this Circuit

18 _____

19 [6]      Professor Coffee also argues that a percentage of the recovery is the only reasonable method of

20 awarding fees in common fund cases:

21         If one wishes to economize on the judicial time that is today invested in monitoring
           class and derivative litigation, the highest priority should be given to those reforms

22         that restrict collusion and are essentially self-policing.  The percentage of the
           recovery fee award formula is such a "deregulatory" reform because it relies on

23         incentives rather than costly monitoring.  Ultimately, this "deregulatory" approach is
           the only alternative . . . .

24 John C. Coffee, Jr., *Understanding the Plaintiff's Attorney:  The Implications of Economic Theory*

25 *for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-
   25 (1986).

26 [7]      "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class

27 shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest
   actually paid to the class."  15 U.S.C. §78u-4(a)(6).

28

is that a fee award be "'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).   In view of the result obtained, the contingent fee risk and the financial commitment of Lead Counsel, an award of 25% of the recovery obtained for the Class is appropriate.

**B.     Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of 25% in This Case**

Lead Counsel submit that, as the factors discussed below demonstrate, attorneys' fees of 25% of the fund recovered for the Class are reasonable under the circumstances of this case and should be approved.

**1.      The Result Achieved**

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

A Settlement Fund of $78 million has been obtained through the efforts of counsel for Lead Plaintiffs without the necessity and risk of summary judgment, trial and appeals.  This settlement is one of the larger securities class action settlements since the passage of the PSLRA even though actual provable damages could have been a small fraction of this amount had the case moved forward through expert discovery, summary judgment and trial.  Lead Counsel's pursuit of Lead Plaintiffs' claims has resulted in a substantial and certain recovery for the Class.

Given the above, there is no doubt that Lead Counsel achieved a superior recovery for Class Members in this case and should be awarded the 25% benchmark fee requested to compensate them for such a favorable result.

**2.      The Risks of Litigation**

Numerous cases have recognized that risk is an important factor in determining a fair fee award.  *See, e.g.*, *WPPSS*, 19 F.3d at 1299-1301; *Lindy Bros. Builders v. Am. Radiator & Standard*

*Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976).  Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk.  *WPPSS*, 19 F.3d at 1300; *Lindy*, 540 F.2d at 117.  As the court aptly observed in *King Resources*:

> The litigation also involved unique and substantial issues of law in the technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages.
>
> * * *
>
> In evaluating the services rendered in this case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation.  The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical.

420 F. Supp. at 632, 636-37.  *See also In re Heritage Bond Litig. v. U.S. Trust Co. of Texas, N.A.*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award").

As set forth in the Lawrence Declaration, substantial risks and uncertainties were present from the outset of this litigation that made it far from certain that any recovery for the Class would be obtained.  While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially.  Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  According to the April 2006 NERA study, dismissal rates have doubled since the PSLRA, accounting for 40.3% of dispositions.  *See* Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?*, at 4 (NERA Apr. 2006), attached as Exhibit 1 to the Declaration of Joy Ann Bull in Support of an Award of Attorneys' Fees and Reimbursement of Expenses ("Bull Decl.,") submitted herewith.

When cases are dismissed, the result is large losses for the plaintiffs' firms involved.  There is no question that, if not settled, Lead Counsel in this case faced the substantial risk of years of litigation with no guarantee of any compensation.  Lead Counsel achieved a significant recovery for

the Class in the face of very substantial risks.  Under these circumstances the requested fee is fully justified.

### 3.    The Skill Required and the Quality of the Work

The successful prosecution of these complex claims required the participation of highly skilled and specialized attorneys.  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *38 ("The experience of counsel is also a factor in determining the appropriate fee award").  From the outset, counsel for Lead Plaintiffs engaged in a concerted effort to obtain the maximum recovery for the Class.  Lead Counsel demonstrated that, notwithstanding the barriers erected by the PSLRA, they would work to develop sufficient evidence to support a convincing case.

Lead Counsel's thorough investigation and extensive discovery has uncovered evidence to thus far successfully defeat Defendants' motions to dismiss.  As a result of these efforts, Lead Counsel were able to negotiate a settlement they believe is fair under all the circumstances.  The skill demonstrated by Lead Counsel supports the requested fee.  *See, e.g.*, *J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

The quality of opposing counsel is also important in evaluating the quality of the work done by plaintiffs' counsel.  *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).  Lead Plaintiff was opposed in this litigation by counsel from a law firm with a nationwide reputation for vigorous advocacy of its clients' interests.

### 4.    The Novelty and Difficulty of the Questions Presented

Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *See, e.g*., *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  As the *Johnson* court stated:

> Cases of first impression generally require more time and effort on the attorney's part.  Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law."  Instead, he should be appropriately compensated for accepting the challenge.

488 F.2d at 718.

Courts have properly recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted).

In addition to being factually complex, this case also involved numerous complex questions of law under the PSLRA, in particular the application of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) to the facts of this case. The application of *Dura* to this litigation posed significant risks to Lead Plaintiffs' ability to successfully survive the pending motion to dismiss, Defendants' anticipated motion for summary judgment, and prevail on the issue of loss causation at trial.

### 5.    The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee. It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Prudential*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

1    *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D.

2    La. May 18, 1994).

3            Before plaintiffs' counsel commit to prosecute a securities class action on a contingent fee

4    basis, an assessment of the strength of the case, the likelihood of a recovery, the probable size of

5    damages and the cost of litigating the case is weighed against the expectation of payment if

6    successful.  In this Circuit, plaintiffs' counsel expect to be paid a reasonable percentage of any

7    recovery, usually in the range of 25% (absent a fee agreement with the client to seek a different

8    amount).   Our expectation about the likely fee, if successful, is part of the equation when

9    determining whether to pursue a case.

10           Moreover, there are numerous class actions in which plaintiffs' counsel took the risk,

11   expended thousands of hours, and yet received no remuneration whatsoever despite their diligence

12   and expertise.  Subsequent to the passage of the PSLRA, a high percentage of cases in this Circuit

13   have been dismissed at the pleading stage in response to defendants' arguments that the complaints

14   do not meet the PSLRA's pleading standards.

15           Indeed, because the fee in this matter was entirely contingent, the only certainty was that

16   there would be no fee without a successful result and that such result would only be realized after

17   significant amounts of time, effort and expense had been expended.  Counsel for Lead Plaintiffs have

18   received no compensation for their efforts during the course of this litigation.  Absent this settlement,

19   there was a sizeable risk that at the end of the day, Class Members, as well as their counsel, would

20   obtain no recovery.  Counsel for Lead Plaintiffs have risked non-payment of approximately $4.3

21   million in out-of-pocket expenses and approximately $9.4 million in time worked on this matter,

22   knowing that if their efforts were not successful, no fee would be paid.  *See, e.g.*, *Winkler v. NRD*

23   *Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants motion for judgment as a matter of

24   law after jury verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

25           **6.      A 25% Fee Award Is Below the Average Fee Awarded in
                       Similar Complex Class Action Litigation**

26

27           A Federal Judiciary Center study released in 1996, which covered all class actions in four

28   selected federal district courts with a high number of class actions, including this district, found that

1   as to the size of attorneys' fees: "Median rates ranged from 27% to 30%."  Thomas E. Willging,

2   Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District*

3   *Courts: Final Report to the Advisory Committee on Civil Rules*,  at 69 (Federal Judicial Center

4   1996).  Bull Decl., Ex. 2.  This finding is in line with an analysis of fee awards in class actions

5   conducted in 1996 by National Economic Research Associates, an economics consulting firm.

6   Using data from 433 shareholder class actions, the study concludes: "Regardless of case size, fees

7   average approximately 32 percent of the settlement."  Denise N. Martin, Vinita M. Juneja, Todd S.

8   Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in*

9   *Shareholder Class Actions?* at 12-13 (NERA Nov. 1996).  Bull Decl., Ex. 3.  The benchmark fee

10   requested is less than the average paid in these shareholder class actions.

11          Further, the fee requested is supported by recent fee awards at or above the Ninth Circuit

12   benchmark in other class action cases:

13   • *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627 (awarding one-third of $27,783,000

14      settlement fund);

15   • *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (upholding award of one-third of

16      $7.25 million settlement fund in securities class action);

17   

18   • *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upheld fee award of

19      33.3% of $1.725 million settlement);

20   • *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (25% fee on $193

21      million settlement);

22   • *Ikon*, 194 F.R.D. 166 (fee of 30% of $111 million);

23   

24   • *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4,

25      2001) (30% fee awarded on $83 million settlement);

26   • *Vizcaino*, 290 F.3d at 1047 (affirming 28% fee award);

27   

28

- *In re Prudential Sec. Ltd. P'ships Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996) (27% fee awarded on $110 million settlement);

- *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001) (25% fee awarded on $110 million settlement fund);

- *In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238-K, 2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004) (25% fee award);

- *In re Prison Realty Sec. Litig.*, No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) (30% fee awarded in $104 million settlement);

The fees paid in these comparable cases support the 25% fee award requested.

### 7.    The Customary Fee

Circuit courts and scholars have encouraged the "mimic the market" approach in setting fees in common fund class action cases.  The Seventh Circuit has consistently taken this approach.  *See Cont'l Ill.*, 962 F.2d at 568 ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by the court order."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services.").

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable.  *Vizcaino*, 290 F.3d at 1050 n.4.  If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum*, 465 U.S. at 903* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee

1    contracts have traditionally ranged between 30% and 40% of the total recovery."); *Ikon*, 194 F.R.D.

2    at 194 (same).  Thus, the customary contingent fee in the private marketplace – 30% to 40% of the

3    fund recovered – is much higher than the percentage fee requested in this case.[8]

4         The customary fee in contingent litigation supports a benchmark fee award of 25% as fair

5    and reasonable.

6              **8.    Reaction of the Settlement Class Supports Approval of the
                       Attorneys' Fees Requested**

7         The Court-approved notice was sent to over 240,000 Class Members and the Court-approved

8    summary notice was published in *Investor's Business Daily*.  *See* Declaration of Christl Hansman Re

9    A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action and the Proof of

10   Claim and Release Form and B) Publication of the Summary Notice, submitted herewith.  There are

11   three objections to the amount of attorneys' fees.  The Third Circuit recently noted that a low level of

12   objections is a "rare phenomenon."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir.

13   2005).  Moreover, as this Circuit has held, a small number of objections do not stand in the way of

14   approval of a reasonable fee.  *See Mego Fin.*, 213 F.3d at 459; *Marshall v. Holiday Magic, Inc.*, 550

15   F.2d 1173, 1178 (9th Cir. 1977).

16        George and Maribeth Lebus make a general objection that the attorneys' fees are too high.

17   As explained herein, the fee requested is reasonable under applicable case law and the circumstances

18   of this case.

19

20   _____

21   [8]     Professor Conte acknowledged the propriety of adequately compensating counsel based on the
22   result obtained in common fund cases:

23          [C]ourts have been careful to award a fully compensable reasonable fee based on the
            underlying economic inducement for class action lawyers to pursue potentially
24          expensive or complex common fund class litigation.  These lawyers assume the risk
            of no compensation unless they successfully confer common fund benefits on the
25          class, based on their reasonable expectation that they will share in the recovery in a
            fair proportion, in contrast to receiving a fee based initially on time-expended criteria
26          that fail to give the **results obtained** factor primary consideration.

27   1 Alba Conte, *Attorney Fee Awards* §1.09, at 16 (2d ed. 1993) (emphasis in original).

28
     NOTICE OF MOTION & MEMO OF P'S & A IN SUPPORT OF LEAD PLAINTIFFS' APPLICATION
     FOR AWARD OF ATTYS' FEES & REIMBURSEMENT OF EXPENSES - C-02-2270-JW(PVT)        - 13 -

1    The Commonwealth of Pennsylvania Public School Employees' Retirement System

2  ("PSERS") is joined by the New York State Teachers' Retirement System ("NYSTRS") in objecting

3  to the 25% fee requested by Lead Counsel.  While PSERS and NYSTRS do not object to the

4  adequacy of the settlement, they aver that a 25% fee is not reasonable.  Lead Counsel disagree.

5    First, PSERS mentions that it asked Lead Counsel to provide lodestar information.  The

6  lodestar information was not provided because it is not relevant to a determination of a fair fee where

7  the fee request is reasonable on its face.  In a recent case awarding attorneys' fees of 25% of a $190

8  million fund, the court determined that a lodestar cross-check was unnecessary when the fee

9  requested was reasonable on its face.  *Rite Aid*, 146 F. Supp. 2d at 736.  The *Rite Aid* court

10  determined that the average fee in "settlements between $100 million and $200 million is 28.1%."

11  *id.*, finding a lodestar cross-check to be unnecessary, as it would be here.

12    Moreover, reliance on the amount of attorney time in determining the fee award has been

13  substantially abandoned in common fund cases because it encourages delay, inefficiency and

14  recalcitrance toward early settlement.  *See In re Harrah's Entm't*, No. 95-3925, 1998 U.S. Dist.

15  LEXIS 18774, at *15 (E.D. La. Nov. 25, 1998) ("Because counsel prosecuted this action on a

16  contingent fee basis, the Court would rather focus on results obtained.  To overly emphasize the

17  amount of hours spent on a contingency fee case would penalize counsel for obtaining an early

18  settlement and would distort the value of the attorneys' services.").

19    Second, PSERS contends that there is an inherent conflict of interest between the Class and

20  Class counsel at the fee settling stage.  Use of the percentage method in awarding attorneys' fees

21  substantially eliminates any inherent conflict because it aligns the lawyers' interest with the interest

22  of the Class and the lawyers gain only to the extent the Class gains.  *See Kirchoff*, 786 F.2d at 325-

23  26 and discussion at page 4, *supra*.  Leading academics, researchers, and many judges have

24  concluded that use of the percentage method creates a harmony of interests between the class and its

25  counsel and thus is consistent with the due process rights of class members.  *See* Silver, *supra*,

26  discussion at page 5.

27    Third, PSERS states that a 25% fee is not reasonable because it would not have agreed to that

28  percentage if it had been the lead plaintiff.  Neither PSERS or NYSTRS filed a case or moved to be a

1   lead plaintiff here.  In fact, NYSTRS has never filed a class action or moved for lead plaintiff.

2   Instead, NYSTRS is of the view that "[b]eing a lead plaintiff invariably entails years of work toward

3   an uncertain end; being an objector entails only a few hours of research and letter writing."  Wayne

4   Schneider, *Objections to Attorneys Fee Requests in Federal Securities Class Actions*, The NAPPA

5   Report, Vol. 19, No. 1, February 2005, at 11.  Bull Decl., Ex. 4.  In fact, Mr. Schneider, General

6   Counsel of NYSTRS, has noted that "As I see it today, being a lead plaintiff doesn't make much

7   sense except possibly where the plan has sustained such a large loss that receiving even one or two

8   cents more on the dollar would mean hundreds of thousands of dollars in additional recovery."

9   Wayne Schneider, *An Obligation to Pursue Litigation? Really?*, The NAPPA Report, May 1997.

10  Bull Decl., Ex. 5.

11          Fourth, PSERS cites to other class action cases where courts have awarded less than a 25%

12  fee.  We are aware of and have negotiated contingent fees of less than 25% in securities class action

13  cases based on the circumstances of a particular case.  However, that is not the situation here.  As

14  explained herein and in the Lawrence Declaration, the benchmark fee requested here is  reasonable

15  under the circumstances of this case and should be approved.

16          Finally, many courts have approved the requested attorneys' fees over the objections of these

17  institutional investors.  *See*, *e.g.*, *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980 (D. Minn. 2005)

18  (awarding a 25% fee on an $80 million settlement over a number of objections including PSERS and

19  NYSTRS); *Schwartz v. TXU Corp.*, Cause No. 3:02-CV-2243-K, 2005 U.S. Dist LEXIS 28453

20  (N.D. Tex. Nov. 8, 2005) (awarding the 22.2% fee negotiated with lead plaintiffs on a $149 million

21  settlement and finding PSERS and NYSTRS arguments to be without merit); *In re Charter*

22  *Commc'ns, Inc. Sec. Litig.*, MDL No. 1506 (E.D. Mo. June 30, 2005) (court approved the fees

23  requested by plaintiffs' counsel noting that: (1) the "critical focus of any fee determination [is] the

24  recovery achieved for the Class"; and (2) "other district courts in this Circuit have denied similar

25  objections by these same three pension funds [including PSERS and NYSTRS] in granting a 25%

26  fee."), s*ee* Bull Decl., Ex. 6 at 33, 32 (citing *Xcel*, 364 F. Supp. 2d 980); *Scheiner v. i2 Techs., Inc.*,

27  No. 3:01-CV-418-H (N.D. Tex. Oct. 1, 2004) (awarding 25% fee over objection of NYSTRS), Bull

28  Decl., Ex. 7; *In re Titan, Inc. Sec. Litig.*, No. 04-CV-0676-LAB (NLS) (S.D. Cal. Dec. 20, 2005)

(awarding 25% fee on a $61.5 million cash settlement over objection of NYSTRS), Bull Decl., Ex. 8; *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 1:04CV00416 (M.D.N.C. Feb. 15, 2007) (awarding fee of 23.5% agreed to with lead plaintiffs on settlement fund valued at $75 million over the objection of NYSTRS), Bull Decl., Ex. 9.  Likewise, this Court should overrule the objections submitted by PSERS and NYSTRS.

**IV.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

Counsel for Lead Plaintiffs have incurred expenses in an aggregate amount of $4,300,599.61 in prosecuting the litigation.  These expenses are set forth in the declarations of counsel submitted to the Court herewith.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).  *See also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs.  *Id.  See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted).  The categories of expenses for which counsel seek reimbursement are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund.

Expenses include the costs of computerized research.  These are the charges for computerized factual and legal research services such as LEXIS/Nexis and Westlaw.  It is standard practice for attorneys to use LEXIS/Nexis and Westlaw to assist them in researching legal and

1   factual issues and reimbursement is proper.  *See Media Vision*, 913 F. Supp. at 1371.  Indeed, courts

2   recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class

3   money.  *See Cont'l Ill.*, 962 F.2d at 570.  In approving expenses for computerized research, the court

4   in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub*

5   *nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of

6   computerized research as a reason reimbursement should be encouraged.  The court also noted that

7   fee-paying clients reimburse counsel for computerized legal and factual research.  *Id.*

8       In addition, certain counsel were required to travel in connection with this case.  The

9   expenses in this category are reasonable in amount, and are properly charged against the fund

10   created.  *See Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated and*

11   *remanded on other grounds*, 461 U.S. 952 (1983); *In re McDonnell Douglas Equip. Leasing Sec.*

12   *Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith,*

13   *Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

14       Photocopying costs are also customarily reimbursed in common fund cases.  *See McDonnell*

15   *Douglas*, 842 F. Supp. at 746.  Duplication of documents and pleadings was necessary for the

16   effective prosecution of this case.

17   **V.    CONCLUSION**

18       From the beginning, Lead Plaintiffs were faced with determined adversaries represented by

19   experienced counsel.  Without any assurance of success, Lead Plaintiffs and their counsel pursued

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION & MEMO OF P'S & A IN SUPPORT OF LEAD PLAINTIFFS' APPLICATION
FOR AWARD OF ATTYS' FEES & REIMBURSEMENT OF EXPENSES - C-02-2270-JW(PVT)      - 17 -

1   this litigation to a successful conclusion.  Accordingly, we submit that for the reasons set forth above

2   and in the Lawrence Declaration, the Court should award Lead Counsel attorneys' fees of 25% of the

3   Settlement Fund and reimbursement of $4,200,000 in out-of-pocket expenses.

4   DATED:  March 5, 2007                    Respectfully submitted,

5                                            LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
6                                            PATRICK J. COUGHLIN
                                             JEFFREY W. LAWRENCE
7                                            DENNIS J. LAWRENCE
                                             CHRISTOPHER P. SEEFER
8                                            SHIRLEY H. HUANG
                                             100 Pine Street, Suite 2600
9                                            San Francisco, CA  94111
                                             Telephone: 415/288-4545
10                                           415/288-4534 (fax)

11                                           LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
12                                           WILLIAM S. LERACH
                                             JOY ANN BULL
13

14
                                                      s/ Joy Ann Bull
15                                           _____
                                                     JOY ANN BULL

16                                           655 West Broadway, Suite 1900
                                             San Diego, CA  92101
17                                           Telephone:  619/231-1058
                                             619/231-7423 (fax)
18
                                             Lead Counsel for Plaintiffs
19
                                             LAW OFFICES BERNARD M. GROSS, P.C.
20                                           BERNARD M. GROSS
                                             DEBORAH R. GROSS
21                                           Wanamaker Bldg., Suite 450
                                             100 Penn Square East
22                                           Philadelphia, PA  19107
                                             Telephone:  215/561-3600
23                                           215/561-3000 (fax)

24

25

26

27

28

NOTICE OF MOTION & MEMO OF P'S & A IN SUPPORT OF LEAD PLAINTIFFS' APPLICATION
FOR AWARD OF ATTYS' FEES & REIMBURSEMENT OF EXPENSES - C-02-2270-JW(PVT)        - 18 -

1
2   COHEN, MILSTEIN, HAUSFELD
       & TOLL, P.L.L.C.
3   STEVEN J. TOLL
    LISA M. MEZZETTI
4   JOSHUA S. DEVORE
    1100 New York Avenue, N.W.
5   West Tower, Suite 500
    Washington, DC  20005-3964
6   Telephone:  202/408-4600
    202/408-4699 (fax)
7
    SCHATZ NOBEL IZARD, P.C.
8   ANDREW M. SCHATZ
    JEFFREY S. NOBEL
9   NANCY A. KULESA
    One Corporate Center
10  20 Church Street, Suite 1700
    Hartford, CT  06103
11  Telephone:  860/493-6292
    860/493-6290 (fax)
12
    Additional Counsel for Plaintiffs
13
    S:\Settlement\Verisign.set\BRIEF FEE 00039719.doc
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

<u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on March 5, 2007, I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system which will send notification of such filing to the e-mail

4  addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5  mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6  participants indicated on the attached Manual Notice List.

7        I further certify that I caused this document to be forwarded to the following designated

8  Internet site at:  http://securities.lerachlaw.com/.

9

10                                         s/ Joy Ann Bull
                                        JOY ANN BULL

11

12                                      LERACH COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
13                                      655 West Broadway, Suite 1900
                                        San Diego, CA  92101-3301
14                                      Telephone:  619/231-1058
                                        619/231-7423 (fax)
15

16                                      E-mail: JoyB@lerachlaw.com

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 5:02-cv-02270-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jenniea@lerachlaw.com

- **Randi D. Bandman**
  randib@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Noah Daniel Boyens**
  nboyens@omm.com

- **Patrick J. Coughlin**
  patc@lerachlaw.com e_file_sf@lerachlaw.com

- **Joshua Seth Devore**
  jdevore@cmht.com

- **David Malcolm Furbush**
  dfurbush@omm.com dbrown@omm.com;dshah@omm.com;lnewell@omm.com

- **Marc Lawrence Godino**
  mgodino@glancylaw.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Christopher T. Heffelfinger**
  cheffelfinger@bermanesq.com

- **Dennis J. Herman**
  dennish@lerachlaw.com e_file_sf@lerachlaw.com

- **Jessica Anne Hoogs**
  jhoogs@omm.com

- **Shirley H. Huang**
  shirleyh@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Meredith N. Landy**
  mlandy@omm.com
  dfurbush@omm.com;dbrown@omm.com;lhabbeshaw@omm.com;dedmondson@omm.com;jbake

- **Jeffrey W. Lawrence**
  jeffreyl@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **Ioana Petrou**
  ioana.petrou@usdoj.gov tyle.doerr@usdoj.gov

- **Darren J. Robbins**

- **Mark Wayne Robertson**
  mrobertson@omm.com

- **Lori E. Romley**
  lromley@omm.com dbrown@omm.com

- **Adam T. Savett**
  asavett@cmht.com

- **Shana Eve Scarlett**
  shanas@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Andrew M. Schatz**
  firm@snlaw.net

- **Christopher Paul Seefer**
  chriss@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com;KiyokoF@lerachlaw.com

- **Dhaivat H. Shah**
  dshah@omm.com rbrown@omm.com

- **Alfred Glenn Yates, Jr**
  yateslaw@aol.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Amy Freeman
O'Melveny & Myers
400 S. Hope Street
Los Angeles, CA 90071

Bernard M. Gross
Law Offices of Bernard M. Gross, P.C.
Suite 450, John Wanamaker Bldg.
Juniper & Market Streets
100 Penn Square East
Philadelphia, PA 19107

Nancy A. Kulesa

Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103

**Lisa M. Mezzetti**
Cohen Milstein Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500
West Tower
Washington, DC 20005

**Simon Bahne Paris**
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

**Steven J. Toll**
Cohen Milstein Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N. W.
West Tower, Suite 500
Washington, DC 20005-3964

**Mark S. Willis**
Cohen Milstein Hausfeld & Toll PLLC
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, DC 20005

## VeriSign Manual Service List

Robert M. Roseman
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
215/496-0300
215/496-6611 (fax)

Arthur L. Shingler III
Scott + Scott LLP
600 B Street, Suite 1500
San Diego, CA 92101
619/233-4565
619/233-0508 (fax)

Objectors

Joseph M. Cafiero
Veronica W. Cafiero
10 Packsaddle Road West
Rolling Hills, CA 90274
310/544-4160

William L. Purdon
11475 Foxhaven Drive
Chesterland, OH 44026
440/729-7295

Lenann T. Engler
Commonwealth of Pennsylvania
Public School Employees' Retirement System
5 North Fifth Street, 5th Floor
Harrisburg, PA 17101
717/720-4687
717/783-8010 (fax)

Joseph J. Indelicato, Jr.
New York State Teachers' Retirement System
10 Corporate Woods Drive
Albany, New York 12211-2395
800/356-3128
518/447-2679 (fax)

Todd Turner
The Turner Firm
1200 Summit Avenue
Suite 800
Fort Worth, Texas 76102
817/878-2700
817/878-2705 (fax)